CASE 75.—ACTION BY JOHN LEACH AGAINST THE STAND-
ARD OIL COMPANY.—June 7, 1910.

# Leach v. Standard Oil Co.

Appeal from Jefferson Circuit Court (Common
Pleas Branch, First Division).

WILLIAM H. FIELD, Judge.

Judgment for plaintiff, and defendant appeals.—
Affirmed.

1.  Master and Servant—Injuries to  Servant—Competency  of
    Fellow Servant—Knowledge of  Master.—Plaintiff,  an  em-
    ploye of defendant, was directed by defendant's foreman
    to assist another servant in rolling a barrel of oil up a skid.
    While rolling the barrel, the other servant let his end of the
    barrel slip back, and plaintiff was injured by the throwing
    of the weight of the barrel upon him. Defendant knew that
    one of the hands of the other servant had been injured, and
    was still bandaged at the time of the injury to plaintiff.
    Held, that the question whether defendant knew, or could by
    ordinary care have known, of the incapacity of the other
    servant, was for the jury, and that the presumption as to his
    capacity arising from the fact that he was originally com-
    petent was rebutted by the knowledge of his subsequent
    injury.
2   Master and Servant—Action for Injuries—Sufficiency of Evi-
    dence.—Evidence in an action for injuries to a servant held
    to sustain a finding of the jury that another servant who was
    assisting plaintiff, when he was injured, was incompetent,
    and that the injury was caused by his incompetency.
3   Master and Servant—Actions for Injuries—Instructions.—In
    an action by a servant for an injury received while rolling a
    barrel of oil up a skid, assisted by another servant, an in-
    struction requested by defendant that the plaintiff assumed
    the risk incident to rolling the barrel up the incline with one
    other helper, and, if the jury should find that plaintiff was in-
    jured owing to the insufficient number of helpers, they should

Leach v. Standard Oil Co.

find for defendant, was properly refused, as the court had refused to authorize a recovery on the ground of insufficient help, and, having refused to present plaintiff's side of the issue, defendant was not prejudiced by a failure to produce its side of the same issue.

4.   Trial—Actions for Injuries—Instructions.—Plaintiff was injured while assisting another servant to roll a barrel of oil up a skid by his assistant letting his end of the barrel slip back, throwing the entire weight of the barrel upon plaintiff. Some time previously the assistant had been injured, and at the time of the accident he still carried one of his hands in a bandage. The court instructed that, when defendant's foreman directed plaintiff to roll the barrel up the skid, it was his duty to furnish an assistant who was able to help roll the barrel with reasonable safety to plaintiff, and, if the jury believed from the evidence that the assistant was not competent to perform the duties required because he had an injured hand, if such was the fact, and that defendant or its officers or employes superior in their service to plaintiff knew or could have known by ordinary care that, because of his injured hand, the assistant was incapable of the service required, and plaintiff did not know that the assistant's hand was in that condition, then the law is for plaintiff, and the jury should so find unless they further believe from the evidence that at the time plaintiff was himself negligent, and that such negligence helped to cause the injury, and that but for such negligence he would not have been injured. Held that while the first part of the instruction was objectionable for placing upon defendant the absolute duty to furnish plaintiff a competent assistant, the error was cured by the subsequent language used.

5.   Master and Servant—Actions for Injuries—Sufficiency of Instructions.—In an action for injuries to a servant caused by the alleged incompetency of an assistant, instructions held to fairly present the law of the case.

6.   Trial—Misconduct of Counsel—Questions to Witness.—In an action for injuries to a servant while helping to roll a barrel of oil up a skid, counsel for plaintiff in presenting the case to the jury stated that he would prove that the skid had been repaired shortly after the alleged injury, and, on objection to the statement by defendant's counsel, the court held the statement incompetent. Thereafter, in trial of the case, plaintiff's counsel asked a witness what change he made in the skid after the accident. Held that, while the evidence

was incompetent, counsel for plaintiff acted within his rights in asking the question, as a decision of the trial court is not final or conclusive as to the admission or rejection of testimony, and, in order to raise the question on appeal whether the court's action was proper, it was proper to ask the question in order, if held incompetent, to take proper exceptions.

7. Trial—Introduction of Evidence—Repeating Objectionable Questions.—Where a question has been asked of a witness and the evidence sought to be introduced is held to be inadmissible, counsel should not persist in asking, in the presence of the jury, the same question of every witness who is introduced, but should state to the court in the presence of the opposing counsel the fact that he wishes to ask the same question, and should then make the same avowal, and have the transcript of the evidence show this fact.

8. Appeal and Error—Harmless Error—Examination of Witness.—In an action for an injury to a servant while rolling a barrel of oil up a skid, the court sustained an objection to a statement by plaintiff's counsel that he intended to show that the skid had been repaired after the injury. In examining his witnesses, plaintiff's counsel asked a witness what change he made in the skid after the accident and objection to it was sustained. Held, that defendant was not prejudiced by the repetition of the question to another witness where the court did not authorize a recovery on the ground of the dangerous condition of the skid.

HUMPHREY & HUMPHREY for appellant.

JACOB SOLLINGER for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Appellee, John Leach, brought this action against appellant, Standard Oil Company, to recover damages for personal injuries. The jury returned a verdict in his favor for $3,300. From the judgment based thereon this appeal is prosecuted.

The facts are these: Appellee had been employed for quite a while as a workman in the lubricating de-

partment of appellant's plant in Louisville.  It was
his duty to fill the barrels with lubricating oil and
roll them on the level out to the skid.  It was the
duty of other employes to roll the barrels up the skid
and dump them into tank wagons.  A few weeks
prior to the accident hereinafter referred to, appel-
lant discharged some of its men whose duty it had
been to roll the barrels of oil up the skid.  This duty
then fell upon appellee, and he performed the same
for several weeks prior to the accident.  In order to
raise a barrel of oil to the height of the top of the
tank wagon, so that it might be dumped therein, ap-
pellant had in use a platform about two feet above
the ground floor.  From this platform there ran an
inclined plane, 14 feet long, to another platform, 7
feet, 6 inches high.  This inclined plane had a rise of
5 1-2 feet in 14 feet.  It was 4 feet in breadth.  Near
the center of it were two strips of wood set on edge.
On the outside of these strips were cleats placed there
to give the men who were rolling barrels a proper
foothold.  Between the two strips of wood there were
no cleats.  The strips of wood were used for the pur-
pose of keeping the bulge of the barrels from touch-
ing the floor of the chute.  Appellant had in its em-
ploy a man by the name of Al Morse.  He had fallen
off a ladder and scratched the palm of his hand on a
cinder about three weeks before the day of the acci-
dent to appellee.  The day he was hurt the superin-
tendent of the plant gave him an assistant to help him
perform his duties.  After that time he regularly per-
formed his duties, part of which consisted in carrying
five-gallon buckets of oil.  He often carried a bucket
of oil in each hand.  At the time of the accident
Morse still wore a bandage on his hand.  He says,
however, that it was not sore to amount to anything

at the time. Just before the injury occurred, Morse came to the skid, and stated that he wanted some lubricating oil. John Kline, the foreman of the lubricating department, directed appellee to help Morse with the barrel. Morse and appellee rolled the barrel almost to the top of the skid. There Morse let his end of the barrel slip back, because, he says, his foot slipped. Upon this point the evidence for appellee is to the effect that Morse let the barrel slip because his hand was sore. When Morse let the barrel slip, its weight fell upon appellee. In attempting to hold it in position to prevent it from rolling down, he was put to a severe strain which produced a rupture. Appellee's evidence tends to show that it was necessary to have more than two men to roll a barrel up the skid. On the other hand, the testimony for appellant was to the effect that two men were all that were necessary or were ever used for that purpose. After the accident, Leach worked for the rest of the day, which was Saturday. He came back and worked all day Monday, and, at least, a part of the time on Tuesday. He returned Wednesday morning, and stayed until 9 o'clock. Appellee says that he complained of the injury which he had received. Appellant's witnesses, however, testified that no complaint was made. One witness says that appellee stated that he was leaving because he had a better job. The superintendent claims that appellee told him that he was leaving because some of the men were "knocking" on him.

In his petition appellee charged four acts of negligence: First, that the skid was unsafe and dangerous on account of oil and grease which had collected thereon; second, that this was not his regular occupation, and that he had not been instructed how to

roll barrels on the skid; third, that appellant furnished him an insufficient number of helpers; fourth, that the helper which appellant did furnish him was incompetent to help on account of an injured hand, which appellant knew, but which appellee did not know. There was very little evidence tending to show that the skid was unsafe; and, as it was shown that the condition of the skid was as well known to appellee as it was to appellant, the court refused to submit the case to the jury upon the question whether or not the skid was unsafe and dangerous. There was no evidence at all tending to support appellee's second ground of negligence. While there was evidence tending to show that more than two men were necessary properly to roll a barrel up the skid, the court refused to submit this issue to the jury, for the reason that, if true, appellee himself knew the fact and assumed the risk. The propriety of this ruling is not now before us. The incompetency or incapacity of Morse, and whether or not his incompetency was known, or could, by the exercise of ordinary care, have been known by appellant, and whether appellee did not know of the incompetency, and whether or not Morse's incapacity caused the injury, was the only question submitted to the jury.

Upon this issue, it is urged that there was no evidence justifying the submission of the case. In this connection it is insisted that having employed Morse, who was competent, the presumption was that his competency continued. Such a presumption, however, has no application to the facts of this case. It is admitted that the superintendent knew of the injury to Morse's hand. He gave Morse an assistant on the day he was injured. Thereafter Morse continued to wear a bandage on his hand, up to and including

the day of the accident. Morse himself, while claiming that his hand was practically well, testified that he suggested to appellee the propriety of changing positions with him, so that the strain of rolling the barrel would not fall on his injured hand. This appellee denies. That Morse's hand was injured there can be no doubt. Having knowledge of the injury at the time it was received no presumption can arise of the competency of Morse. Under such circumstances, the question whether or not appellant knew, or could, by the exercise of ordinary care, have known of Morse's incapacity, was one for the jury. Nor can we say that the finding of the jury upon this, or upon the other question, whether or not the accident was caused by reason of the fact that Morse's hand was injured, was flagrantly against the evidence. The fact that Morse used this hand in his ordinary occupation of carrying buckets of oil does not conclude the question in favor of appellant. He may have been able to carry a five-gallon bucket of oil with his injured hand, and yet have found himself unable to bear the increased pressure resulting from an attempt to roll up a skid a barrel of oil estimated to weigh from 400 to 500 pounds.

It is next insisted that the court erred in failing to give the following instruction to the jury: "The court instructs the jury that the plaintiff assumed the risk incident to rolling the barrel up the incline with one other helper, and, if the jury should find that the plaintiff was injured owing to the insufficient number of helpers, they should find for the defendant." It is a sufficient answer to this contention to say that the court in its instruction did not authorize a recovery on the ground of insufficient help. Having refused to present appellee's side of this issue to the

jury, appellant was not prejudiced by the court's refusal to present its side of the same issue.

The court instructs the jury as follows:

"(1) When the foreman of the defendant directed the plaintiff, John Leach, to roll the barrel in question up the skid for the purpose of being emptied into the wagon containing the lubricating oil, it was the duty of the foreman to furnish Leach with an assistant who was able to help Leach roll the barrel up the skid with reasonable safety to the plaintiff and to his assistant, and if you shall believe from the evidence that Al Morse, the assistant who was furnished the plaintiff for the purpose of rolling the barrel up the skid, was not competent to perform the duties required—that is, to assist in rolling the barrel up the skid—by reason of the fact that he had a wounded or injured hand, if such was the fact, and that the defendant or its officers or employes superior in its service to John Leach knew, or could have known by the exercise of ordinary care, that the hand of Al Morse was in such condition as rendered him incapable of performing the service required—that is, the rolling the barrel up the skid—and that the plaintiff did not know that Morse's hand was in the condition that disqualified him for the purpose that he was assisting in at the time, then the law is for the plaintiff, and you should so find, unless you shall further believe from the evidence that at the time the plaintiff was himself negligent, and that, by reason of his negligence, he helped to cause or bring about the injury of which he complains, and when but for such negligence he would not have been injured.

"(2) But, unless you shall believe from the evidence that the hand of Morse by reason of it being wounded or sore was in such condition as to dis-

qualify him from performing the duty that was im-
posed upon him in rolling the barrel up the skid with
reasonable safety, and that the defendant or its of-
ficers or employes superior in authority in its service
to the plaintiff knew, or could have known by the
exercise of ordinary care, the condition of Morse's
hand, and that such condition disqualified him for the
purpose that he was ordered to assist in, the law is
for the defendant and you should so find. Or, if you
shall believe from the evidence that the plaintiff
knew that Morse's hand was in such condition as to
disqualify him from doing the work required of him
at that time, the law is for the defendant, and you
should so find. Unless you shall believe from the evi-
dence that Morse's hand by reason of its being
wounded or sore was in such condition as to disquali-
fy him from performing the duty that was imposed
upon him—that is, rolling the barrel up the skid with
reasonable safety to the plaintiff—the law is for the
defendant and you should so find. If you find for the
plaintiff, you should find for him in such sum as will
reasonably and fairly compensate him for any pain
and suffering, mental and physical, caused by his in-
juries, and for any permanent impairment to his
power to earn money, if any there is shown by the
evidence, directly resulting from his injuries, not ex-
ceeding in all the sum of $10,000, the amount claimed
in the petition. If you find for the defendant, you
will simply say so and no more. Ordinary care means
the degree of care usually exercised by ordinarily
careful and prudent persons under the same or simi-
lar circumstances. Negligence means a failure to
exercise ordinary care. Contributory negligence
means a failure on the part of the person who was
injured to have exercised ordinary care for his own

safety, and, when by reason of such failure, he helped to cause or bring about the injury of which he complains, when but for such failure upon his part he would not have been injured.''

It is claimed that instruction No. 1 is erroneous because it placed upon appellant the absolute duty of furnishing appellee a competent assistant. While this instruction is subject to criticism, we conclude that the error, if any, in the first part of the instruction, was cured by its subsequent language, which aptly expresses the law applicable to a case of this kind. With this language before them the jury could not have been misled by the introductory sentence. On the whole, we conclude that the instructions fairly presented the law of the case, certainly every phase of appellant's defense was presented. Not only the abstract instruction on contributory negligence was given, but the jury were further told to find for the defendant if they believed from the evidence that appellee knew that Morse's hand was in such condition as to disqualify him from doing the work required of him at the time. Thus, what would constitute contributory negligence was clearly pointed out.

Another ground urged for reversal is the misconduct of counsel for appellee. It appears that in presenting the case to the jury appellee's counsel stated that he would prove that the chute upon which appellee was injured had been repaired shortly after the alleged injury. This statement was objected to by counsel for appellant. The court held the statement incompetent. Thereafter, during the trial of the case, appellee's counsel asked the witness Parker: ''What change did you make in the skid after the accident?'' He also asked the witness Kline the same question. While the evidence was incompetent, we

conclude that counsel for appellee acted within his rights when so interrogating the witnesses. The decision of the circuit court is not final or conclusive as to the admission or rejection of testimony. In order that the propriety of the court's action may be reviewed, the question should be properly raised on appeal. This can best be done by asking a witness the question, and, if held to be incompetent, by making proper avowals. Counsel should not be concluded by the court's ruling when the proposed evidence is referred to in his opening statement and the court holds such evidence to be incompetent. It not infrequently happens that evidence that is incompetent or irrelevant at one stage of the proceedings becomes relevant or competent at another stage of the proceedings. To hold an attorney bound by one adverse decision of the court so as thereafter to make it improper for him to get before the jury the rejected evidence would often deprive a party of the benefit of evidence to which he is justly entitled. The proper procedure, however, where the question has been asked of one witness and the evidence sought to be introduced is held to be inadmissible, is for counsel not to persist in asking, in the presence of the jury, the same question of every witness who is introduced, but to state to the court, in the presence of the opposing counsel, the fact that he desires to ask the same question and make the same avowal, and have the transcript of the evidence show this fact. In this way counsel may be relieved of the charge of persistence in trying to get before the jury matters which the court has held should not be brought to their consideration. In the case before us, appellant was not prejudiced by the fact that counsel for appellee propounded the question complained of to a second wit-

ness, for the simple reason that the court did not authorize a recovery by appellee on the ground of the unsafe or dangerous condition of the skid.

Judgment affirmed.